UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 99 CR 545-9 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| WADE HEMPHILL, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION & ORDER**

Defendant Wade Hemphill moves to reduce his sentence to time served under § 404 of the First Step Act, Pub. L. 115-391, 132 Stat. 5194, § 404 (2018). After filing that motion for relief, Hemphill also moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court finds Hemphill eligible for relief under the First Step Act and concludes that he has shown himself deserving of such relief. Therefore, the Court, in its discretion, grants his motion for relief under the First Step Act [665] and reduces his custodial sentence to time served. All other terms of his original sentence remain in effect. Because the Court has reduced Hemphill's sentence to time served, it denies his motion for compassionate release [678] as moot.

**BACKGROUND**

On November 3, 1999, a grand jury charged Hemphill and co-defendants with conspiracy to knowingly and intentionally distribute and possess with intent to distribute more than 5 kilograms of mixtures containing cocaine and more than 50 grams of mixtures containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1). Doc. 44. The grand jury also charged Hemphill and a co-defendant with possession with intent to distribute 373.1 grams of mixtures containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 20). On June 1, 2000, a jury found Hemphill guilty of those charges. Doc. 149. On December 6, 2001, the court sentenced Hemphill to 360 months' imprisonment and 5 years of supervised release. Doc.

339. At the sentencing hearing, the court concluded that Hemphill had a criminal history category of VI and determined that the total offense level was 40. Doc. 329-7 at 97:23–98:2. After his sentencing, Hemphill has sought relief through motions to reduce his term of imprisonment. On April 21, 2020, Hemphill filed the present motion for a reduced sentence under § 404 of the First Step Act. The government argues that Hemphill is not eligible for relief under the First Step Act and even if the Court finds him eligible, it should not exercise its discretion to reduce his sentence.

## ANALYSIS

The Fair Sentencing Act of 2010 increased the quantity of crack cocaine required to trigger mandatory minimum sentences. Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010). However, the Fair Sentencing Act was not retroactive and therefore did not impact defendants who committed acts prior to August 3, 2010. Congress addressed this in 2018 by passing the First Step Act, which made certain provisions of the Fair Sentencing Act retroactive. Pub. L. No. 111-220, 124 Stat. 2372; *United States v. Shaw*, 957 F.3d 734, 737 (7th Cir. 2020). The First Step Act made retroactive the Fair Sentencing Act's increase in the quantity of crack cocaine necessary to trigger § 841's penalties. Section 404(b) of the First Step Act provides, in pertinent part: "A court that imposed a sentence for a covered offense may, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." *Id.* § 404(a).

Relief under the First Step Act is discretionary. *See id.* § 404(c). Therefore, there are two steps in this analysis: (1) whether the defendant is eligible for a sentence reduction under the First Step Act; and (2) whether the Court should reduce the defendant's sentence. *Shaw*, 957 F.3d at 736.

**I.   Eligibility**

Hemphill committed the relevant offense prior to August 3, 2010, thus, his violation satisfies the first requirement of a "covered offense" under § 404(a) of the First Step Act. The government argues that there is no "covered offense," however, because Count 1 alleged a conspiracy that involved more than 5 kilograms of powder cocaine, for which the penalty is unchanged, and Count 20 specified an amount of cocaine base that exceeded 280 grams, the quantity necessary to trigger the highest statutory minimum of 10 years.

When the court convicted and sentenced Hemphill, the statutory sentence for conspiracy to possess with intent to distribute in excess of 50 grams of cocaine base was 10 years to life. 21 U.S.C. § 841(b)(1)(A) (2006). The Fair Sentencing Act reduced the statutory penalties for 50 grams of cocaine to a lesser range of 5 to 40 years. *Id.* § 841(b)(1)(B). Under current law, 280 grams of cocaine base is necessary to subject a defendant to the higher, 10-year statutory minimum. *Id.* § 841(b)(1)(A). Therefore, the Fair Sentencing Act modified the statutory penalty for the underlying statute of conviction, thus, there is a "covered offense" for purposes of the First Step Act. *Shaw*, 957 F.3d at 739–40 (defendants eligible to seek relief under the First Step Act because the Fair Sentencing Act modified the penalties for crack cocaine).

The Seventh Circuit has not yet addressed whether a defendant is eligible for a reduced sentence under the First Step Act when he is charged with a conspiracy to distribute crack cocaine and another controlled substance and, as here, the distribution of that other controlled

3

substance alone provided the basis for the sentence. *See United States v. Taylor*, No. 04 CR 495-38, 2020 WL 2476529, at *4 (N.D. Ill. May 13, 2020). However, many courts have concluded that the First Step Act covers an offense even when a defendant was convicted of a multiple-objective conspiracy. *See id.* ("the Fair Sentencing Act modified the statutory penalties for the crack cocaine portion of a multiple-drug conspiracy charge even if the penalties for other controlled substances remain the same" and a multi-objective conspiracy is covered); *United States v. Gravatt*, 953 F.3d 258, 262 (4th Cir. 2020) ("a multi-object conspiracy where the penalties of one object (possession of crack cocaine) were modified by the Fair Sentencing Act, while the penalties of the other (powder cocaine) were not reduced" is covered for purposes of the First Step Act); *United States v. Frazier*, No. 2:97 CR 88, 2020 WL 5046949, at *1 (N.D. Ind. Aug. 25, 2020) (same); *see also United States v. Coates*, No. 04 CR 464-4, 2020 WL 2745974, at *2 (N.D. Ill. May 27, 2020) (the defendant's offense was still covered when it involved both heroin and powder cocaine); *United States v. Mitchell*, No. 06 CR 723-2, 2020 WL 1139245, at *3 (N.D. Ill. Mar. 9, 2020) (conviction was a covered offense when the indictment charged the defendant with a heroin and crack cocaine conspiracy). This Court agrees. The Fair Sentencing Act modified the statutory penalties for crack cocaine, and "the statute of conviction alone determines eligibility for First Step Act relief." *Shaw*, 957 F.3d at 739. Although the Fair Sentencing Act did not modify the penalty associated with 5 kilograms of powder cocaine, the Act did modify the penalty for 50 grams of mixtures containing cocaine base, also involved in the conspiracy, and Count 1 is therefore a covered offense.

The government next argues that Count 20 is not a covered offense because it specified a quantity of 373.1 grams of cocaine base, and the First Step Act did not modify the corresponding penalty. As discussed, Count 1 is a covered offense, and one covered offense is enough to make

4

Hemphill eligible for relief. *See United States v. Biggs*, No. 05 CR 316, 2019 WL 2120226, at *3 (N.D. Ill. May 15, 2019) ("Although only one of Biggs's two convictions qualifies as a covered offense, the court 'imposed a sentence for a covered offense' when it entered its single sentencing judgment."); *United States v. Mansoori*, 426 F. Supp. 3d 511, 517 (N.D. Ill. 2019) ("Though a defendant must have been convicted of a 'covered offense' to be eligible for relief under the First Step Act, Section 404(b) does not limit a court's discretion to reduce sentence only to the covered offense."); *Taylor*, 2020 WL 2476529, at *3–4 (defendant was eligible for relief because his conviction was based in part on conspiring with intent to distribute 50 grams of crack cocaine, although he was also convicted of four other counts involving crack and powder cocaine); *United States v. Johnson*, No. 01 CR 543, 2019 WL 2590951, at *1, *3 (N.D. Ill. June 24, 2019) (finding defendant eligible for relief because the jury found him guilty of distributing more than 50 grams of crack cocaine, despite other charges of multi-drug conspiracy and intent to distribute powder cocaine).

Additionally, the Court must only determine whether the Fair Sentencing Act modified the statutory penalties for the statute under which the jury convicted Hemphill. *Shaw*, 957 F.3d at 738. Here, the jury convicted Hemphill of violating 21 U.S.C. § 841(a)(1), and the Fair Sentencing Act modified the penalties for crack cocaine under that statute. *See id.* at 739–40 ("The defendants' offenses are 'covered offenses' under the plain language of the First Step Act because the Fair Sentencing Act modified the penalties for crack offenses as a whole, not for individual violations."). The Seventh Circuit's recent opinion in *United States v. Hogsett* confirms a broad reading of the Fair Sentencing Act and refutes the government's argument that Count 20 does not involve a covered offense because it would have resulted in the same statutory penalties after the Fair Sentencing Act. No. 19-3465, 2020 WL 7134464 (7th Cir. Dec. 7, 2020).

*Hogsett* held that the defendant's conviction of possession with intent to distribute 0.5 grams of crack cocaine was a covered offense. *Id.* at *1. Section 841(b)(1)(C) indicated a penalty not to exceed 20 years for that quantity of crack cocaine both before and after the Fair Sentencing Act. *Id.* at *3. Before the Act, that provision covered specified quantities below 5 grams; after the Act, that provision began to cover quantities between 5 and 28 grams. *Id.* The court explained that "the Fair Sentencing Act modified the statutory penalties for § 841(b)(1)(C), so all convictions under that subsection—*regardless of whether they are subject to a different penalty range*—are 'covered offenses.'" *Id.* (emphasis added). Similarly, before the Fair Sentencing Act, 50 grams of crack cocaine triggered a mandatory minimum of 10 years. *See id.*; *see also* 21 U.S.C. § 841(b)(1)(A) (2006). After the Act, 280 grams of crack cocaine triggered the ten-year mandatory minimum. *See Hogsett*, 2020 WL 7134464 at *3; *see also* 21 U.S.C. § 841(b)(1)(A). Therefore, the Act modified the statutory penalties for a conviction under 21 U.S.C. § 841(a)(1). *See Shaw*, 957 F.3d at 737 ("[T]he Fair Sentencing Act changed the quantity that triggers certain penalties of imprisonment."). Accordingly, the Fair Sentencing Act also modified the statutory penalties for the statute of conviction for Count 20, and Hemphill is therefore eligible for relief even though the statutory mandatory minimum remained the same for the specified quantity.

**II.    Relief**

The Court must now decide whether to exercise its discretion to reduce Hemphill's sentence. In determining whether a sentence reduction is warranted, the Court considers the § 3553(a) factors. *Id.* at 742; *see also United States v. Hudson*, 967 F.3d 605, 609 (7th Cir. 2020) (in evaluating whether to reduce a defendant's sentence, courts may consider "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct"). "Evidence of post-

sentencing rehabilitation 'may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.'" *Mansoori*, 426 F. Supp. 3d at 519 (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011)). The record contains substantial evidence of Hemphill's post-sentencing rehabilitation. Hemphill completed drug abuse education at the beginning of his sentence. He has also completed approximately 30 educational courses. Those include a Custodial Maintenance Program, which involved over 100 hours of work, and training to become a Landscape Management Technician, which involved 500 hours. Additionally, Hemphill is currently employed as a unit orderly and has maintained clear conduct. Hemphill also indicates that he is a certified forklift and walking pallet operator, and he is certified in CPR/AED with the American Heart Association.

In addition to Hemphill's accomplishments, his letter to the Court provides further evidence of his rehabilitation. Hemphill expresses remorse for the harm his actions caused to his family, community, and society at-large. He acknowledges that his actions caused him to be absent from his sons' lives, and he hopes to be present in his grandchildren's lives. Hemphill indicates that he intends to become a productive member of society. Additionally, Hemphill has family members and friends who are prepared to support him upon release. Ten individuals wrote letters to the Court that detail the ways that Hemphill has supported them during his incarceration, the change they have witnessed in him, and the support they would provide upon his release. His niece expressed that Hemphill can reside in her home upon release and she will help him find employment. Hemphill additionally attached a re-entry plan to his motion for compassionate release that details prospective employment opportunities as a long-distance truck driver or at an HVAC business, a residence, healthcare, a financial plan, and means of transportation, as well as a relapse prevention plan. Doc. 682 at 25–26. Further, Walter Partee

who owns an HVAC company submitted a letter that indicates he would offer Hemphill a place in his company's training program, which runs for 5 weeks and results in an HVAC provider license upon completion.[1]  Doc. 682-1 at 30.  All of this evidence demonstrates to the Court that Hemphill has taken steps to rehabilitate himself and intends to positively contribute to society upon release.  Thus, incarceration appears to have had the desired deterrent effect, leading Hemphill to be a law-abiding member of society going forward.

The BOP webpage lists Hemphill's release date as March 25, 2025, thus, he has less than four-and-a-half years of his sentence remaining.  The Court remains sensitive to the considerations that supported the original sentence, including recognition of the seriousness of the offense and the desire to avoid unwarranted sentencing disparities.  However, Hemphill has put forth substantial evidence that shows he has taken steps to improve himself throughout incarceration and would lead a productive life upon release.  Hemphill is 56 years old, an age at which recidivism is less likely.  *Taylor*, 2020 WL 2476529, at *6 (noting that defendant was 52 years old, "an age when recidivism is less likely," and granting relief under the First Step Act); *Mansoori*, 426 F. Supp. 3d at 519 (recidivism at the age of 59 is "far less likely").  Hemphill has

---

[1] The government expresses concern with this prospective employment because (1) a court sentenced Partee to 192 months' imprisonment for drug trafficking offenses around the same time that a court sentenced Hemphill and (2) the Illinois Secretary of State database indicates that Partee's corporation dissolved in 2017 and the City of Chicago database does not indicate an active business license.  First, Partee has shown rehabilitation and Partee's criminal history is not a reason to devalue the employment opportunity he is offering Hemphill.  Indeed, the support of another individual who was incarcerated and rehabilitated himself enhances Hemphill's overall support system.  *See also* Doc. 46, *United States v. Walter Partee*, No. 99-CR-946-2 (N.D. Ill. April 24, 2015) (granting Partee's motion for early termination of supervised release).  Second, Partee's company is now a registered LLC, *see* Doc. 690-1, and Partee's business has 3 regular employees and 1 part-time employee.  In a sur-reply, the government continues to express concern with the legitimacy of Partee's business.  *See* Doc. 694.  Hemphill replies to the government's brief, explaining that Partee has a Chicago business license and has since taken steps to change the name on his license.  Doc. 697 at 2.  At this stage, the Court's focus is on Hemphill's signs of rehabilitation; this prospective employment is one indicator of that.  The Court will not get into the weeds of the parties' competing views of the legitimacy of Partee's business because that is not what is at issue here.

served a substantial portion of his 360-month sentence, well beyond the applicable statutory mandatory minimum sentence of 10 years. *See* 21 U.S.C. § 841(b)(1)(A). Because Hemphill has completed 10 years of his sentence, there is no statutory limit on the Court's discretion to reduce his sentence. *See Taylor*, 2020 WL 2476529, at *5.

The government argues that the Court should not exercise its discretion under the First Step Act to lower Hemphill's sentence due to the severity of the offense conduct. The Court acknowledges that Hemphill engaged in serious conduct, but that fact alone does not indicate that he should not receive relief. The government also argues that Hemphill has never accepted responsibility for his offenses. This is plainly false, as Hemphill's letter to the Court clearly expresses his remorse and desire to contribute positively to society. Additionally, the Court rejects the government's suggestion that it focus on Hemphill's criminal history, specifically his designation as a career offender. It is undisputed that Hemphill committed offenses prior to the convictions at issue here; however, the improbability of recidivism and Hemphill's signs of rehabilitation weigh against this argument. *See United States v. Snulligan*, No. 99 CR 561-5, 2020 WL 5702295, at *6 (N.D. Ill. Sept. 24, 2020) (reducing the defendant's sentence to time served despite the government's emphasis on his criminal history); *cf. Taylor*, 2020 WL 2476529, at *3 (the fact that the court sentenced the defendant under the career offender guidelines does not affect eligibility for relief). The government unpersuasively argues that Hemphill should not receive a "windfall" unavailable to other defendants sentenced for the same offenses. This Court joins the courts in this district that have consistently rejected that "windfall" argument. *See, e.g.*, *United States v. McMahan*, No. 04 CR 423-2, 2020 WL 1904095, at *5 (N.D. Ill. Apr. 17, 2020) ("the government asks the court to keep [the defendant] in prison based on a hypothetical" that reducing his sentence would result in a windfall);

9

*Mansoori*, 426 F. Supp. 3d at 518–19 ("The Court will not assume that any defendant could have been indicted on a greater drug quantity."); *United States v. Wright*, No. 03 CR 362-2, 2019 WL 3231383, at *3 (N.D. Ill. July 18, 2019) ("Nor does the Government's argument as to potential sentencing disparities change the Court's analysis."). Further, Hemphill's post-sentencing record outweighs the risk of any "windfall." When viewed alongside the evidence of Hemphill's rehabilitation, the Court finds that a sentence of time served is appropriate because Hemphill has served a sentence greater than the mandatory minimum.

## CONCLUSION

The Court grants Hemphill's motion for a reduced sentence under Section 404 of the First Step Act [665]. The Court orders that Hemphill's sentence be reduced to time served. The Court leaves all other conditions of his sentence intact. Additionally, the Court grants Hemphill's motion to file a sur-sur-reply brief [696]. The Court denies Hemphill's motion for compassionate release as moot [678].

Dated: December 10, 2020

                                                SARA L. ELLIS
                                                United States District Judge